The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. All right. Please be seated. We'll begin with, we'll start with the Wonsang case and then Mr. Bachrach. Is that it? Mr. Bachrach, yes, Your Honor. Pronunciation? Thank you. May I please support? Good morning. I'm Joshua Bachrach. I represent the appellant here, Reliance Standard, in this ERISA case. The district court decision is contrary to the law of ERISA and this court's decisions in a number of ways, but we think that there's one issue in particular that can resolve the appeal most easily, and that is the district court's refusal to remand the claim to Reliance Standard once the new issue of the self-reported symptoms limitation was identified. So, when the lawsuit was brought, Reliance Standard realized that there is this limitation that potentially applies to the claim. And it limits benefits to 24 months for conditions that are described as self-reported subjective disorders. And Reliance Standard asked the district court to remand the claim so that could be evaluated. The district court refused and instead entered judgment awarding benefits to Wonsang. That decision is contrary to this court's decision in Gagliano versus Reliance Standard 547F3-264. In Gagliano, the defendant, in that case, same defendant, in the final decision letter identified a different limitation for the first time and denied the claim based on that. When did this matter come up regarding this on appeal? How did that, was this discussed at the district court level? The- The question of whether the self-reported conditions limitation applies. Yes, in the briefing in the district court. It was also an affirmative defense that was raised in the answer. Was it in the termination letter? It was not in the termination letter. How about, was it in the letter of denial to Wonsang? It was not. It was raised for the first time during the litigation. But looking at the Gagliano case- Did you mention it in your complaint? I'm sorry. Your answer to the complaint. The answer, it was. It was an affirmative defense in an amended answer to the complaint. Okay. So, but the Gagliano case held that there was no notice to the plaintiff of this new defense that was raised in that case for the first time on appeal because they didn't have a right to appeal it. Therefore, the proper remedy is to remand it. The district court in that case just awarded benefits like the district court here. But the Fourth Circuit said that that was wrong to award benefits because you can't stop a plan administrator or claim administrator from relying on the plain language. A court can't award benefits that are not due under the terms of the plan. And that's the language in the statute. 29 U.S.C. 1132 A1B. A court can only award benefits due under the terms of the plan. So, what the Fourth Circuit held there was that procedural violations cannot justify an award of benefits that potentially are not payable under a limitation like the one here. What are we supposed to do with the procedural violations? I mean, you say they don't forfeit the standard of review, and I understand the points you're making. But what is the effect of the procedural violations? Because obviously Congress didn't want you to take forever to resolve the administrative appeals. You had a 45-day period or whatever, and we went beyond that. So, I hear you when you say it doesn't forfeit the standard of review, and I understand that. But what is the effect of it? Well, Your Honor, that's a secondary. That's a different issue. So, the first issue is we identified a new policy provision that was not addressed previously. But I'm still asked. You may think it's a separate issue, but I want to know what the effect of it is. Because people that are seeking benefits, they do deserve a timely response. And that apparently didn't happen here, and it concerned the district court. And so, I'm asking you, if we were to agree with you that it doesn't forfeit the standard of review, what impact does it have? Understood. So, there is an initial review, initial decision, and that decision is entitled to deference. So, you may be asking yes, but then they submitted appeal. But you could still review that decision and take into consideration their appeal submissions and review that under an abuse of discretion standard. So, you think the one song is not entitled to an appeal. So, the first decision, we should just treat it like it's the final decision. They're the ones that raised the issue of failure to render it timely. So, you can excuse why we do that, but that's not to answer my question. My question is, you want us to treat that initial denial as the decision that's owed deference. That's what you're asking us to do. That's what I'm asking you to do, and that's consistent with the Supreme Court precedent, which does not provide exceptions to discretionary review when you have deference. The Firestone decision, the Glenn decision, all of them say that. But the key phrase you just said is when you have deference, right? So, when you do what you're supposed to, you get deference. When you violate the statute by not providing a full and fair appeal, you forfeit that deference. Well, according to the Tenth Circuit, no. According to the Eighth Circuit, no. And the Tenth Circuit decision in the E&C case is particularly persuasive. So, when I go to, like, sit down to think about this, you want the Tenth and Eighth Circuit's reasoning to be what I really focus on, that you think their reasoning is persuasive vis-à-vis the Seventh Circuit's reasoning. And so I ought to, like, take the reasoning from those two sets of cases and say, the Eighth and Tenth Circuit, their reasoning, it's super persuasive, and you think that's what's going to convince us to ignore the well-reasoned Seventh Circuit decision. That's what you're asking. I do believe it is more well-reasoned. But the issue here also is, and this is going back to your point, both of your points, there was no violation because my client received the appeal on December 2nd, the entire appeal. The claimants did not submit it properly. And by the time we got the appeal submissions, the enclosures with it, was December 2nd. Now, they referred to it. That sounds like a tolling argument to me because you actually did get it, picked it up, in November the 9th, and you're saying you didn't get it all until then, but you didn't make that argument down below. Yes, we did. Not on tolling. Not on tolling, and it's not a tolling argument. It's when the appeal is received. And we stated repeatedly we did not receive it until the 2nd. You have internal people in there saying that you received it in November. Your Honor, if you look at the claim note, it doesn't say that. It says that we cannot locate their submission, not that we received it. And the problem with that was the instructions. It took me locations with the lawyer during that time period. And we asked for the documents, and it took us until December 2nd. I'm sorry, you said you didn't say that? It says we received a letter from you on November 2nd, submitted with your request for appeal, with additional documentation. I mean, you can say that we should ignore what you said, but you can't answer Judge Wynn by saying we didn't say it. No, no, Your Honor. It says that they did fax over the appeal as well. We received the letter. We did not receive the enclosures. We weren't able to access the enclosures until December 2nd when they were sent over again. I'm sorry, because I'm literally reading it, right? And it's like you're just saying, like, don't believe what you read on the paper. Not at all, Your Honor. So help me understand when you say we received a letter wherein you requested an appeal, submitted with your request was an additional documentation including 124 pages. Like, that says we received your letter requesting an appeal, and it included 124 pages. And we got it. When? On November 2nd. It's saying we cannot locate it because the problem was. I'm sorry. So please tell me where in there it says we cannot locate it. You may think you've lost it. We did. Well, Your Honor, the thing is. Tell me the precise language you're relying on to represent to this court that you said that you didn't receive it. You may have lost it. Go to JA page 205. It is 205, Your Honor. It's right there. I mean. It says we still do not have the documents sent by the attorney in the file for appeal review. And it does say, though, they were delivered. And picked up from the post office on 11-9, but to date nothing has been scanned into the file. Because they couldn't. So they received the fax of it as well. Then she says three days later she sent a follow-up email and says it's been nearly a month. We still do not have the documents sent by the attorney for the file, though they were delivered. Understood, Your Honor. They asked him for a copy. What's understood? That they were delivered? That when you answered Judge Wynn a minute ago, you were not being truthful. Right? That when he. Everything that you've said. Right? It says here they were delivered. We received them. Right? You may not have them now. It is fair that you have lost them. That may be true or maybe not true. But what you can't say is that you said we didn't have them. Your Honor, the instructions to the claimant were if you appeal it, you must send the appeal to the quality review unit. There's no dispute that the letter was not addressed. So we don't know where it went to. They could not locate it. So when you say it was delivered and we received it, you want us to read those as saying it was not delivered and we did not receive. Just put a not in front of the language that you use. No, Your Honor. It was. It was misdelivered because we don't know what department it wound up in. And what they're referring to is if you look at the first sentence, they're agreeing with the attorney when he says the tracking information from the attorney documents that it was delivered and picked up from the post office. It doesn't say it was delivered to the quality review unit. And that was the big issue here. They couldn't locate it. So by the time they got it, it was December 2nd. So I understand what you're saying, Your Honor. But that to me is not the big issue in this appeal. The big issue in this appeal is going back. It's a big issue depending on which date is the date on which it was delivered, at least in the initial determination. Then once we get beyond that, we find that this is outside and it's a question of what the review level would be. I don't think you need to get to that, Your Honor, because the first point that I was making. The issue in the appeal, and I understand that, is the plan very plainly set forth a reposed discretion in the fiduciary. And the discretion that the plan reposed in the fiduciary was explicit. And the Supreme Court has made a great deal out of that standard of review being one of abusive discretion. And then there's a question of why have they attached such importance to it? And they have because if these cases come up to the courts on a de novo standard, there are going to be a lot of administrative decisions overturned. But the upshot of it will be that the plans will run short of funds or companies will be more reluctant to adopt the plans in the future or to adopt generous plans in the future if the de novo standard is going to be the standard of review. And so the Supreme Court has said that these issues of timeliness and the rest may figure in the standard of review, but the standard of review isn't forfeited. And that's what I understand your position to be. That's correct, Your Honor. And going back to the issue of whether we complied with the regulations, we have to understand this is the version that applied before April of 2018 because that claim was 2016. And in Berogan versus Holland, this court stated that substantial compliance is what is required, not strict compliance under the new regulations. And we think there was substantial compliance, but I do want to go back to- These things that we're talking about, they may figure into the ultimate question of whether the claims administrator abused his discretion. Correct. But the fact that they figure into the ultimate question of whether the claims administrator abused his discretion does not mean that you can chuck the standard of review overboard. That is- That's what I'm saying. I think it all meshes and I think it all dovetails, but if there's one thing you draw from the Supreme Court decision is they are very insistent on this discretionary standard of review where fiduciary ERISA decisions are involved. That is our position, Your Honor. Correct. And to be clear, your position is that the decision that must be afforded deference is the initial denial. Under circumstances like this where there's no final decision, yes. Or it is within the court's discretion to remand the claim if the court thinks that that's necessary. But if you're getting deference, it's on the initial decision. If we're doing deference, it's the initial decision, and the remand is a discretionary decision that the district court would have had to abuse its discretion for us to reverse on. That is correct on the issue of the timeliness of the decision. But as I started out the argument, there is a completely separate argument that we're making. And that is when we first raised the issue during the lawsuit of this self-reported symptoms limitation, the court at that point was required under Gagliano to remand. It has nothing to do with whether it was- But the question is what is the standard of review, and what standard of review did the court adopt? I apologize. Go ahead. The court failed to address Gagliano, and that has nothing to do with the standard of review. Gagliano says if you don't provide notice to a claimant of a policy defense, it has to be remanded. Because in the Sedlak case, in the Weaver case, this court held that you can't have a substantive remedy for a procedural violation. We argued the Gagliano case strenuously in the district court. Well, let's suppose that the court decides not to remand. Then that doesn't kick your argument as to the standard of review of the fiduciary's decision out the window, does it? No, it does not. I mean, that's still- Separate. You say, well, it should have remanded to the fiduciary. Okay, I get you on that. But let's say that the district court decided not to do that. Obviously, it did not remand. But that doesn't- All I'm saying is I don't think that that nullifies the argument that you're making, which is that remand or no remand, the fiduciary's decision is subject to an abuse of discretion review. Correct. It is an entirely separate argument, this remand issue for failure to raise during the administrative review. It's an entirely separate argument. I do want to reserve my remaining time unless there are additional questions by the panel. Let me introduce my colleagues, Judge Wynn, Judge Richardson. I'm great, thank you. Okay, thank you.  All right, we'd be happy to hear from you, Mr. Glass. Good morning, Your Honors. Ben Glass for Rebecca Wonsang. Let me just start with this remand issue, which personally, frankly, I thought was the weakest of the arguments that Reliance was making. As the court knows, this issue of there's a limitation for self-reported symptoms was not addressed in the first denial letter, not addressed in this very late denial letter. In fact, it's not addressed anywhere in the claim file. Is that a distinct distinction with Gagliano that it was raised in the denial letter? Yes, sir. Yes, because in Gagliano, so overall the risk of jurisprudence, this court and just about everywhere, is that we're not going to have post hoc rationalizations. We're not going to have very smart. My friend is a very smart lawyer, very smart legal team. They're trying to fix a really bad claims process here. Well, let's suppose that you're correct on the remand issue and that that wasn't raised and that that wasn't pressed, okay? Yes, sir. I suppose we give you that. I guess what concerned me here is the emphasis the Supreme Court has placed. I guess it's in its Birch decision, the Firestone decision, and the progeny of the Firestone decision. Upon this abusive discretion standard of review where the plan provides discretionary authority in the trustee of the fiduciary. Is it fair to say that it's a 30-page opinion or however many pages in. There's just one line that is a line in passing that mentions the abusive discretion standard of review, and the rest of the opinion reads very much like a de novo job. And so how do we get around that in view of the, I mean, whether we're talking about an initial decision or a later decision or this or that, how do we get around the fact that this plan clearly provided and reposed discretion in the plan administrator and the Supreme Court's insistence that that has to be honored? Now, these other things may play into the exercise of discretion, but they don't overturn the standard of review. That's my problem. I understand the question. Yes, sir. A couple of responses to that. First of all, I do think that the district court judge said, look, even under an abusive discretion standard of review, one thing wins. So if this court says, if this court disagrees and says, remands the case to the district court and says, you need to look at this under an abusive discretion standard of review, it's going to be the same record. District court is going to say, I believe I said it the first time. And in fact, the district court, in my view, Judge Wilkinson, did analyze the case by looking at issues like, did reliance fairly address the treating physician opinions? This court, a month or two ago, in the Jeremy Smith versus Cox case, went into depth saying, look, this is what plan administrators are supposed to do. They cannot simply ignore treating physicians. They could disagree, but they have to address these issues. So that's number one. So I think that the district court did, Judge Wilkinson, as an alternative holding. It's not just a line of passing. Well, I know. It's possible, I suppose, to regard that as an alternative holding. But normally, when someone is going to adopt a particular standard of review of the discretionary decision, you would expect it to be kind of up front and saying this. You know, like in our own decisions, we announce the standard of review right off the bat. And this is a fly-by-night single line in the middle of the thing. Now, the question you pose is an interesting one. If we were to say that this really was not abuse of discretion review, you say, well, don't remand it because the district court is going to arrive at the same decision that he did earlier. And I suspect that as a matter of probability, the chances are probably 80-20, 75-25 that the district court . . . I hear you. . . . will arrive at the very same place. So the question is on all these cases, should we say, well, there may have been an incorrect standard of review, but assuming that, it's still . . . we can affirm on an alternate ground. And yet, it's also important to keep these things straight . . . to send signals occasionally that, hey, this is the way you have to approach this kind of case. And it wasn't done here. Now, you may regard that as a . . . that all we're doing is requiring the district court to jump through hoops. But, it's not that clear to me that that's what I'm, you know, trying to do. Because, we do have an interest in standards of review are hugely important in appellate law. And to find, if we are left with an unsettled feeling about which standard of review is applied . . . maybe that's something we should get straight, even though your chances of winning are 80-20. And that even may be conservative. Let me . . . let me ask you to send this message. It's my . . . you're not asking me anything. It's my job to ask you. Let me . . . no, no. I didn't mean it that way, Judge Williams. Okay. I'm asking the court, in its opinion, to send this message. That the district court was correct to apply a de novo standard of review. Because, there was no decision on the merits and there was not this process. We give fiduciaries the benefit of this abuse of discretion standard of review when they act like fiduciaries. When they follow the rules. Let me . . . let me make sure I understand. Yes, sir. At least in terms of where we are, and so that we're all on the same page. It seems to me that abuse of discretion, generally, is what applies. This question comes up when the administrator, whomever, fails to follow within the ERISA time mark. And, therefore, you're outside of the period there. And you have a series of circuits. If I'm reading it correctly, I think you've got the second, third, seventh, and tenth. Your opponent said the tenth was in line, but I don't understand that under Giberson's case. But, nonetheless, that basically says that when you're outside that, then under the five stone default, you go to de novo. Then you've got a couple of circuits that are looking, what I would call the intermediate, or at least some circuit that says, okay, we're not saying you throw it out. But, you've got to come with something and indicate that there is a result here that brings about serious doubts about how it was done. Yes, sir. And, so, it looks like to me the only circuit that goes in that direction is the fifth circuit, formerly the sixth circuit in a case that deals with the question of whether it would continue to be a de novo. And I'm not sure that even still is there because there have been cases after that. But, so, it leaves to us a choice of how to move with this because there is law on both sides of this, even though the majority is going to say that when you miss those deadlines, and as you say, there's no decision or something to work with, then we're going to go with de novo. Some say plain with the majority, but others say we have to see serious doubts in terms of it or defect something in it to go there. So, your advocation is for us to go with the majority view, I take it. It is, and I will tell you the regulations have changed in the interim. And, so, you will probably not even ever see this issue again because, you know, claims are newer. Why is the standard of review set by whether the fiduciary acts as a fiduciary? Because that would go into whether the fiduciary abused its discretion or whatever. But the standard of review for the court is set by the terms of the plan. The standard of review of the fiduciary's decision is not set by how the fiduciary acted. It's set textually by the terms of the plan, is it not? It is in the first instance, Judge Wilkinson. I think, in this case, you have no decision to apply the abuse of discretion to, because I don't think that reliance gets to go back to its initial decision and say, well, that's the one we mean, nothing else counted afterwards. And let me just point out one thing. So, in the regulations that apply, which are the 2,000 regulations, there's a section that's titled Failure to Establish and Follow Reasonable Claims Procedures, and it says, if the plan doesn't, if they don't have a timely decision, then the claimant is deemed to have exhausted her remedies. New regs say deemed denied, but that's new regs, don't apply to this case. And the regulations say that this is deemed exhausted because the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits. So, I do think that when you, and I think I heard Mr. Bachrach concede, I think, again, I'm biased about this, that there is no timely decision in this case. Well, fine. I mean, you can just say the fiduciary here screwed it all up. Yes, that's my view. You know, for the reasons some of my colleagues have suggested, I think, and wisely so, is that the fiduciary may have messed up big time, okay? But my point is, I'm not sure that that changes the standard of review as much as it goes to abuse. I understand what Your Honor is saying. I would simply advocate, one, look at the new regs and just see where the Department of Labor is going with that, because the new regs make it very clear that the standard, that you lose the abuse of discretion standard. But number two, the message here is that, the message I'm asking the court to send is, yes, these rules are very important. When you deny a claim, there are very important timing rules that have to be adhered to by both sides. And when you don't, what are we going to do? Are we going to go back and look at this initial denial letter and apply an abuse of discretion standard? And I think no. I think when the plan has done, the plan administrator has done nothing. I understand what Your Honor is saying about what's in the plan documents. But at some point, when we have rules and we have no final decision- Yes, sir. So you submitted on appeal within the plan new evidence, as you were entitled to do? Yes, sir. New documents and records? Yes, sir. Can you tell me, like in a macro level, what about that was new and different and sort of should have changed the mind of the decision maker? At a summary level, I can read them. Yes, sir. At a summary level, tell me, what were you trying to add there that you think should have affected the decision? Two things. So in all of the appeals that we do, we attack procedurally. So they had a nurse review the claim. The nurse didn't appreciate all of the – so there's a whole section in the appeal about that. Put the procedure aside for a minute and assume that's not what I'm asking. Yes. What I'm saying is, what did you really do that would have required a different result? A couple things. One, we rebutted this whole concern Reliance had that my client was an author, and she was writing, and she had no cognitive issues. And so we had a personal statement in there that addressed that. And there were new and updated medical records. I don't think the updated medical records are drastically different than the records that Reliance had had for the six years or so that this woman had been on CLAN. That's what I'm trying to – I think that's what I'm trying to get at. So, like, her own personal statement about her cognitive issues is, like, a little complicated because it might just reflect her cognitive competence. But is there anything in the medical records that I should look to to think that it is different than what Reliance had at the time of the initial denial? I don't think there's anything new and dramatically different, Your Honor, because we would have – all of us would have been addressing her condition as of the date they terminated the CLAN. Right, the old date. So the fact – Exactly. If she had gotten hit by a bus in the interim, that wouldn't affect the original decision. Correct. Right. Might have required a new decision, I get. Correct. Can I ask one other question? Absolutely. So the district court here resolved this on summary judgment? Yes, sir. And it did so relying on some cases out of other circuits that we have, like, squarely rejected in Techman, where we said you can't do this where there are disputes at summary judgment. It has to be a Rule 52 bench trial. You're familiar with this. I can tell by your face. I'm familiar with it, but I have to tell you it's as complicated to me, and I only do this work. Yes, sir. All right. Well, I can tell by your face that you knew what I was talking about when I started. None of the parties here have asked us to comply with that. The challenge is that y'all can't agree on legal ideas, and so the fact that y'all agree that this can be decided at summary judgment isn't a concession, I'm sure, that I'm not certain that we can accept. So can you help me understand what I should do in that context, where the district court resolved this at Rule 56, relying on cases mainly from the First Circuit that we squarely rejected in Techman and said that a bench trial is required? And so since this would be to your detriment if we got to it, I understand there are lots of issues before that, I wanted to give you a chance to respond to the potential argument that we should vacate and remand not on the issues, frankly, that your colleague has raised, but on the error in resolving this at Rule 56 instead of Rule 52 as we've required.  Honestly, I think it's a distinction without a difference in the real world. Totally get that. Totally get it. Same decision maker. I get it. And I don't mean to interrupt you. But I would also say that you have this 30-page opinion that lists a whole bunch of conceded and undisputed facts at the beginning of the opinion, then analyzes the steps Reliance took or didn't take in evaluating the treating physician's opinion. I would say it's a bit of a morass at the real world level. I just have to tell you that. So I don't know if that answers your question very well, other than to say, again, even if we send this back to the district court, I can't imagine that the decision is going to be different. This bench trial stuff just puts the court in the position of the fiduciary. It does. That's the problem with the whole ERISA scheme is that the taking of evidence and the weighing of evidence is a job that's under the statute reserved for the plan administrator. And a bench trial makes the court into a super plan administrator. And that is not the way the Supreme Court is going. So you may think that I'm hostile to your position.  I'd rather, from my perspective, have an affirmance on an alternate ground than send it back for the district court to act as a super fiduciary. And so the question I'm struggling with is, is this worth a remand when I'm 80% sure? Let's raise that to 90%. The result is going to be the same. But I'm not big on creating super fiduciaries and of making courts as super fiduciaries. And I only have a few seconds. My friend will tell you he argued Techman, and he'll tell you that that's why he argued what he did in Techman, because it has made kind of a morass. Let me just say one final thing. I think if we get to this question of were they late or not, the regs say the time starts running when you get the appeal, even if you don't have all the documents. The plan then can toll, or the plan can, for special circumstances, extend the time, neither of which happened here. And so I just want to make clear, because that really isn't fleshed out well in the briefs at all, that when do we start running the clock? You start running the clock when you get the request for appeal. I appreciate it, unless the court has any other questions. Thank you all very much. Make sure we've had a lot of questions, and we may have some more questions. Judge Wynn? Judge Richardson? We're the nerds that love this stuff, so we appreciate it. You all will still be friends after this. We're good friends. We're good friends. All right, let's hear from you in rebuttal, Mr. Bachrock. Hear what you have to say. Can you at least address the Techman point of what you think we should do, given, except as a premise, right, that there were disputed material facts that were resolved by the order here? What are we supposed to do? Because you didn't raise this argument. Actually, Your Honor, and with all respect, we did in the brief, on page 17 and 19 in our brief. It's footnote 3, and then in footnote 19, we refer to the fact that under Techman, they improperly filed a summary judgment arguing de novo review under Techman. So we filed it as a motion for summary judgment or in the alternative for motion for judgment on the record because of the arguments for de novo review. We said abuse of discretion applies. That is proper under summary judgment. You said you raised it in two footnotes? Yes, Your Honor. I know. I know, Your Honor. It should have been in the main text and understandable. Well, it was considered to be important. I mean, judges have different views of the footnote. I've known judges in my long tenure above the state court here who wouldn't read a footnote. It's amazing. I mean, you would think they should, but of course we do. But, I mean, to say you raised it by mentioning it in a footnote, that's kind of why maybe Judge Richardson started out and said you didn't raise it. I'm not saying he didn't read the footnote, but he probably didn't consider that. He's totally saying I didn't read the footnotes. Oh, I didn't say that. I do love footnotes. So your answer to this is if we were to reject all of your other arguments, and I understand you don't want us to do that, but accept it as a hypothetical, that de novo is the right standard of review, that remand was not required, you would say as sort of the last wall that we would be required to remand for the district court to do a Rule 52 resolution, not a Rule 56 resolution. With specific findings of fact and conclusions of law, which was not done exactly, Your Honor. That kind of thing, Rule 52 disposition, may be theoretically under our precedent a result, but it should be exercised only in the most sparing circumstances. I can't understand why you would want to surrender fiduciary authority to the extent that a bench trial would do. Maybe a bench trial under our precedent is a possibility, but it should be exercised only in the most sparing and extreme circumstances. And I don't understand. You may think it gets you off the hook in this case, but I'm telling you, down the road, you will have essentially bench trials and taking of evidence and consideration of evidence that the statute plainly envisions as the fiduciary's tasks. Why would you ever want that? I argued against it in Techman, Your Honor. I lost. I will, with all due respect to the court on that. But what Techman says, only under de novo review. We're saying de novo review doesn't apply. But what we are saying is that if the district court did apply what we think was wrongly de novo review in this case, it didn't do so correctly. So as Judge Richardson said, that's the last wall here. But we're saying you don't even need to get there. And I do want to... Well, the district court can apply abusive discretion without a bench trial. Correct. And there's no need for a bench trial with an abusive discretion point of view. Most district courts in this circumstance would be horrified because they are applying abusive discretion review with a proper cognizance of what the role of the fiduciary is and what the role of the court is under this statute. And look at the ERISA decisions. Those courts have applied abusive discretion review, and they haven't come near a bench trial. That's correct. But under Techman, we're only dealing with Rule 52 under de novo review. So I agree with Your Honor. We don't think de novo applies, so this bench trial is not an issue. But if you reject everything else, we're saying the district court was still wrong. But in my remaining time, I would like to go back to where I started. And it's an issue that could more easily resolve things than everything else that's been brought up, and that is the failure to remand pursuant to Gagliano. Counsel stated that this is different because it was raised for the first time during the litigation. That's the exact same situation in Smith v. Continental Casualty Company, 369 F. 3rd 412. In that case, it was also brought up, if I may finish the points. Thank you, Your Honor. It was also brought up for the first time during the lawsuit. The district court reversed the district, I'm sorry, this court reversed the district court for reasons unrelated to that point. It was based on the Nord decision. But what the court then said was the district court, even though we're reversing, can then send this back to the plan to address the self-reported symptoms limitation. Same limitation as we're asking for a remand in this case. Well, but sending it back would not require necessarily a remand to the plan. Well, then the court is conducting its own. No, the district court can apply the standard itself. The correct standard.  The limitation is different than the standard of review, though. So we're saying there's this new defense based on a plan term that wasn't originally raised. And we're saying that under Gagliano, since the claimant didn't have a chance to review it, the remand is required so that there can be a full and fair review of the self-reported symptoms limitation. That's the point, Your Honor. Judge Wynn. Thank you, Your Honors. We will adjourn court. We thank both counsel. We will adjourn court and come down and adjourn court sine die. And then we will come down and greet counsel. This honorable court stands adjourned sine die. God save the United States of this honorable court.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson